IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:18-CV-00301-KDB

| | |
|---|---|
| SANDRA SUE STURDIVANT,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL,[1]<br><br>Defendant. | ORDER |

**THIS MATTER** is before the Court on Plaintiff Sandra Sue Sturdivant's Motion for Summary Judgment (Doc. No. 12) and Defendant's Motion for Summary Judgment (Doc. No. 14), as well as the parties' briefs and exhibits. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits ("DIB").

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED**; Defendant's Motion for Summary Judgment is **GRANTED**; and the Commissioner's decision is **AFFIRMED**.

I.  BACKGROUND

Ms. Sturdivant protectively filed her application for DIB on March 5, 2015 alleging disability since May 30, 2008. (Tr. at 544-45).[2] Her application was initially denied (Tr. at 451-461) and again upon reconsideration. (Tr. at 464-476). A hearing was held on July 26, 2017

---

[1] Andrew M. Saul is now the Commissioner of Social Security and is substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] Citations to the administrative record filed by the Commissioner are designated as "Tr."

1

before an Administrative Law Judge ("ALJ"). (Tr. at 394; 412). After the hearing, Ms. Sturdivant amended her alleged onset date to December 2, 2012; thus, the relevant period for purposes of determining her eligibility for DIB was a period of about four months. (Tr. at 394; 414-415). The ALJ ultimately concluded that Ms. Sturdivant was not disabled under section 223 of 42 U.S.C. § 423. (Tr. at 404). The Appeals Council denied her request for review of the ALJ's decision. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner and Ms. Sturdivant has requested judicial review.

For the reasons stated below, the Court affirms the decision of the Commissioner.

## II. THE COMMISSIONER'S DECISION

At step one, the ALJ concluded that Ms. Sturdivant had not engaged in substantial gainful activity since the alleged onset date of December 2, 2012.[3] (Tr. at 397). At step two, the ALJ concluded that she has the severe impairments of degenerative disc disease and osteoarthritis. (Tr. at 397). At step three, the ALJ concluded that her severe impairments did not meet or medically equal the listed impairments in 20 C.F.R. § 404, Subpart P, app. 1 at 1.02 or 1.04. (Tr. at 398). As a prerequisite to step four, the ALJ concluded that Ms. Sturdivant had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the following limitations: occasional stooping and crouching, occasional overhead reaching with the right upper

---

[3] The ALJ followed the required five-step sequential analysis to determine (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) & 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but the Commissioner must prove the claimant is able to perform other work in the national economy despite his limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

2

extremity, and frequent overhead reaching with the left upper extremity. (Tr. at 398). The ALJ concluded at step four that she could perform her past relevant work, rendering her ineligible for DIB. (Tr. at 401-02). The ALJ determined alternatively that there were significant numbers of jobs available in the national economy that she could perform given her RFC, also rendering her ineligible for DIB. (Tr. at 402-03). When determining steps four and five, the ALJ adopted vocational expert ("VE") testimony. (Tr. at 401-03).

The Appeals Council denied her request for review. (Tr. at 1). Ms. Sturdivant appeals to this Court pursuant to 42 U.S.C. § 504(g).

### III. LEGAL STANDARD

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" as follows:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

3

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456; *see also Smith*, 795 F.2d at 345; *Blalock*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

A. Substantial evidence supports the ALJ's RFC determination.

Ms. Sturdivant argues that the ALJ failed to perform a function-by-function analysis prior to determining her RFC. Specifically, she argues that the ALJ failed to account for limitations in concentration (Doc. No. 12 at 11) and did not adequately explain why she omitted limitations in her RFC to sitting, standing, or walking when there is evidence that she has such limitations. (Doc. No. 12 at 12). The ALJ's RFC determination was that she could perform light work "except that she is limited to occasional stooping and crouching" and "occasional overhead reaching with the right upper extremity and frequent overhead reaching with the left upper extremity." (Tr. at 398). The ALJ did not include any nonexertional limitations, such as limitations in concentration, in his RFC determination. (Tr. at 398).

The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c) & 416.946(c). In making that assessment, the ALJ must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling

4

("SSR") 96-8p. The ALJ must also "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Id.* In *Mascio*, the Fourth Circuit held that "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

First, there is substantial evidence supporting the ALJ's RFC regarding Ms. Sturdivant's ability to concentrate. Ms. Sturdivant points to the ALJ's findings that "she has moderate limitations in concentration due to pain." (Doc. No. 12 at 11). The ALJ did note in his step two analysis of Ms. Sturdivant's severe impairments that she "reports trouble concentrating[,] but this is due to pain as opposed to depression." (Tr. at 397-98). However, prior to determining the RFC, the ALJ concluded that in the functional area of concentrating, persisting, or maintaining pace, "the claimant had no limitation." (Tr. at 397). Although the ALJ considered her statements regarding concentration, the ALJ did not make a determination that Ms. Sturdivant had a limitation in concentration.

Ms. Sturdivant points to the Fourth Circuit's holding in *Mascio* that an ALJ must explain why an ALJ's findings that a claimant has a moderate limitation in a prior step "does not translate into a limitation in [the claimant's] residual functional capacity." *Mascio*, 780 F.3d at 638. However, *Mascio* does not control Ms. Sturdivant's case: while the ALJ in *Mascio* had made a finding of a limitation in concentration during a prior step of the analysis, the ALJ here expressly found that Ms. Sturdivant had *no* limitations in concentration at any step. *Id.* (Tr. at 397-401). The *Mascio* Court was concerned that "the ALJ [could] explain why Mascio's moderate limitation in concentration, persistence, or pace at step three [did] not translate into a limitation in Mascio's

5

residual functional capacity," but the ALJ there failed to provide any explanation for the discrepancy. *Id.* This failure to explain how the RFC accounted adequately for the already-identified limitations in concentration required remand. *Id.* Here, there is no discrepancy between the ALJ's findings at a prior step and in his RFC determination. Thus, the ALJ did not fail to account for limitations in concentration in his RFC, as he did not find that there were any limitations in concentration.

The ALJ's RFC sufficiently identifies, weighs, and makes a conclusion against evidence of limitations in concentration. The ALJ considered her reports of limitations in concentration in his RFC analysis ("She stated her back pain went down her leg and affected her concentration.") (Tr. at 399), but ultimately afforded them little weight given the inconsistencies between her statements and the other evidence ("As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the physical exam findings and her reported activities do not support disabling limitations.") (Tr. at 400). Primarily, the evidence showed that she had multiple shoulder and back issues in 2008, but by 2010, she had a full range of motion. (Tr. at 400; 1198; 3240). Furthermore, she was able to work in the years 2010 through 2012. (Tr. at 400; 419-420). This Court therefore finds that there is substantial evidence in the record supporting the ALJ's RFC with respect to limitations in concentration.

Second, Ms. Sturdivant argues that the ALJ "failed to explain why she omitted any limitation [in the RFC] in sitting, standing, or walking, despite evidence that [Ms.] Sturdivant had limitations in each of these activities." (Doc. No. 12 at 12). She points to evidence that she was functioning at only a fraction of her usual level because of pain in her right foot and her shoulder (Doc. No. 12 at 12) (Tr. at 1198; 3239), and that she was in a car accident that exacerbated already-existing pain. (Doc. No. 12 at 13) (Tr. at 3155). Ms. Sturdivant claims that there was no evidence

6

in the record to the contrary, and the ALJ rejected limitations as to sitting, walking, and standing without explanation. (Doc. No. 12 at 13-14).

In fact, the ALJ considered this evidence and found them to be less credible. (Tr. at 398-401). As to Ms. Sturdivant's testimony regarding her symptoms, the ALJ found that it was not entirely consistent with the medical and other evidence. (Tr. at 400). Specifically, she had left rotator cuff surgery in early 2008 (Tr. at 400), she was in a car accident in 2008 and sustained further injuries to her shoulder and back (Tr. at 400; 440; 626-28), and she had laminectomies and a fusion in late 2008. (Tr. at 400; 1313; 1322). However, there was also evidence that she had full range of motion in both shoulders by mid-2010 (Tr. at 400; 1198; 3240), and that she worked part time from 2010-2012. (Tr. at 400; 419-20). There was opinion evidence from 2010 that she should be limited in lifting weight and her range of motion, but while the ALJ accounted for these limitations by limiting her to occasional overhead reaching with the right arm, this opinion evidence does not go to sitting, standing, or walking. (Tr. at 400-01; 640). However, there was medical evidence from a state agency consultant that was consistent with the ALJ's RFC.[4] (Tr. at 475).

"[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (2019). "'[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision."' *Id.* (quoting *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). Here, when the ALJ cites to both medical and nonmedical evidence, explains his reasoning for assigning weight to each source, and then

---

[4] A state agency consultant's function-by-function analysis can constitute the ALJ's function-by-function. *See, e.g.*, *Settlemyre v. Colvin*, No: 5:14–cv–00199–MOC, 2015 WL 5457950, at * 4 (W.D.N.C. Sept. 16, 2015) (stating that "the [C]ourt agrees with the Commissioner that an ALJ may satisfy [the RFC] requirement by referencing a properly conducted function-by-function analysis of state agency consultants").

7

makes an RFC determination, there is "more than a scintilla" of evidence, *Seacrist*, 538 F.2d at 1056-57, that supports the ALJ's conclusion not to include sitting, standing, or walking limitations in Ms. Sturdivant's RFC. So long as there is substantial evidence in the record to support the ALJ's conclusion, it is not for this Court to reweigh the evidence. *Hays*, 907 F.2d at 1456. This Court therefore finds that substantial evidence supports the ALJ's RFC determination.

<u>B. The ALJ's failure to resolve conflicts between the Dictionary of Occupational Titles and VE testimony constitutes harmless error.</u>

The ALJ's RFC determination limited Ms. Sturdivant to "light work" with "occasional stooping and crouching," "occasional overhead reaching with the right upper extremity and frequent overhead reaching with the left upper extremity." (Tr. at 398). At the hearing, the ALJ posed a hypothetical question to the VE containing those limitations. (Tr. at 446-47). The VE testified that, given those limitations, the hypothetical claimant would be able to perform her past jobs of cashier II, customer service clerk, and fast food manager. (Tr. at 446-47). The VE also testified that the hypothetical claimant would be able to perform jobs in the national economy of small parts assembler, electronics worker, and counter clerk. (Tr. at 447). The ALJ then asked the VE if her testimony was consistent with the *Dictionary of Occupational Titles* ("DOT") and its companion publications, to which she responded that it was. (Tr. at 448). The ALJ adopted the limitations contained in the hypothetical as the RFC, and further adopted the VE's testimony regarding the jobs Ms. Sturdivant could perform given those limitations. (Tr. at 401-04).

Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). The ALJ's RFC placed the additional limitation of only "occasional overhead" reaching with her right upper extremity. (Tr. at 398). The ALJ determined that even with those limitations, the jobs of cashier II, fast food manager, and customer service clerk (past relevant work) and small parts assembler,

photofinishing counter clerk, and electronic worker (jobs available in the national economy) were available to her.[5] However, *Selected Characteristics of Occupations* ("SCO"), a companion publication to the DOT, lists each of these jobs as requiring *frequent* reaching—except that of the photofinishing counter clerk, which requires only *occasional* reaching. SCO at 332 (cashier II), 366 (customer service clerk), 406 (fast food manager), 284 (small products assembler), 309 (electronic worker), & 332 (photofinishing counter clerk).

As the Fourth Circuit explained in *Pearson*, although the DOT itself does not indicate whether those jobs would require frequent *overhead* reaching, "the [DOT's] broad definition of 'reaching' means that they certainly *may* require such reaching." *Pearson v. Colvin*, 810 F.3d 204, 211 (2015); *see* App. C, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* C–3 (defining reaching as "[e]xtending hand(s) and arm(s) in any direction"). Because the VE testified (and the ALJ ultimately adopted) that a person with Ms. Sturdivant's RFC could perform jobs that require frequent reaching, which may well include overhead reaching, there is an apparent conflict between the VE's testimony and the DOT. *See Pearson*, 810 F.3d at 211 ("Comparing the [DOT] definition to [the plaintiff's] limitations, the vocational expert's testimony that [the plaintiff] could fulfill the requirements of these occupations *apparently* conflicts with the [DOT].").

---

[5] *See* DOT #211.462-010 (cashier II) (requiring a worker to receive cash from customers, compute bills, itemized lists, and ticket, use adding machine or cash register, make change, and cash and issue checks); DOT # 185.137-010 (fast food manager) (requiring a worker to manage fast food establishments, direct and participate in the making and preparing of food, and coordinate the activities of other workers); DOT # 299.367-010 (customer service clerk) (requiring a worker to arrange for giftwrapping, take orders from customers, prepare special order worksheets, keep records, and assist customers). *See also* DOT # 706.684-022 (small products assembler) (requiring repetitive tasks on an assembly line and loading and unloading machines); DOT # 726.687-010 (electronics worker) (requiring cleaning, trimming, or preparing of assembly line parts and loading and unloading parts); DOT # 249.366-010 (photofinishing counter clerk) (requiring receiving and loading film for processing, collecting payment, and answering customer questions).

Social Security Ruling 00-4p ("SSR 00-4p") requires that an ALJ, before relying on VE testimony to make its disability determination, "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the [DOT], including its companion publication, the [SCO]."  SSR 00-4p.  Furthermore, the ALJ must "[e]xplain in the determination or decision how any conflict that has been identified was resolved."  *Id.*  This is an ALJ's "affirmative duty," and the ALJ does not fulfill this duty by simply asking the VE whether his testimony is consistent with the DOT.  *Pearson*, 810 F.3d at 208.  The ALJ here did not identify or obtain any explanation for the apparent conflicts between the VE and the DOT.  Therefore, the ALJ's determination that Ms. Sturdivant could perform those jobs with her RFC is not supported by substantial evidence.

However, the ALJ's determination that she could perform those jobs given her RFC is harmless error because substantial evidence supports the ALJ's determination that Ms. Sturdivant could perform the job of photofinishing counter clerk.  There is no conflict between the VE's testimony regarding the job of photofinishing counter clerk and the DOT, and Ms. Sturdivant does not argue to the contrary.  *See* DOT # 249.366-010; SCO at 333 (requiring only occasional overhead reaching for the job of photofinishing counter clerk).  (Doc. No. 12 at 19-21).  Thus, while the ALJ may have come to a different conclusion regarding her ability to perform past relevant work at step four had the ALJ resolved the conflict, "such error by the ALJ was harmless because remand would not lead to a different result" with respect to step five.  *Dover v. Astrue*, No. 1:11CV120, 2012 WL 1416410 at * 5 (W.D.N.C. March 19, 2012).

Ms. Sturdivant argues instead that the job of photofinishing counter clerk is outdated, and that "[c]ourts have rejected an ALJ's step-five determination where the DOT occupations relied upon are, on their face, outdated or obsolete."  (Doc. No. 12 at 20).  However, Ms. Sturdivant cites

no authority in this jurisdiction, and this Court finds no such authority, that requires remand when the description of the job in the DOT merely seems outdated. While the Fourth Circuit has remanded based on the VE's use of (and the ALJ's reliance on) a previous edition of the DOT, *see English v. Shalala*, 10 F.3d 1080, 1084-85 (4th Cir. 1993), there is no suggestion here that the VE or ALJ used an outdated version of the DOT. Rather, Ms. Sturdivant's argument is that the DOT description "raises serious doubts about the viability of such an occupation in the current national economy." (Doc. No. 12 at 19). While the DOT is not conclusive of the job's existence in the national economy, it raises a presumption that the job exists. *See id.* at 1085. This Court finds that Ms. Sturdivant has not rebutted this presumption. Consequently, there is substantial evidence supporting the ALJ's determination that Ms. Sturdivant can perform work in the national economy notwithstanding her RFC, and the ALJ's failure to resolve the conflicts between the VE testimony and the DOT with respect to the other jobs is harmless error.

<u>C. Ms. Sturdivant has waived her constitutional claim that the ALJ was not properly appointed because she did not raise the argument at any point during the administrative proceedings.</u>

Based on *Lucia v. SEC*, 138 S. Ct. 2044 (2018), which found that certain Administrative Law Judges of the Securities and Exchange Commission are "officers of the United States" subject to the appointments clause of the U.S. Constitution, Ms. Sturdivant argues that the ALJ's decision denying her DIB should be remanded because the ALJ had not been constitutionally appointed. *Id.* at 2055 ("So what relief follows? This Court has held that the 'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed official.'"). (Doc. No. 12 at 21-24).

However, Defendant Commissioner argues that in *Lucia*, the Supreme Court specifically limited the entitlement of a party to relief to those "who make[] a *timely* challenge to the

constitutional validity of the appointment of [the] officer who adjudicates his case." *Id.* (emphasis added). (Doc. No. 14 at 15-24). Therefore, according to the Commissioner, because Ms. Sturdivant failed to object to the ALJ's appointment at any time in the administrative proceedings below, she cannot challenge the appointment of the ALJ in this Court. *See United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) (holding that parties may not wait until they are in court to raise a statutory "defect in the . . . appointment" of the official who issued the agency's initial decision); *Elgin v. Dep't of Treasury*, 567 U.S. 1, 23 (2012) (holding that the plaintiff was required to exhaust constitutional claim to administrative agency before seeking review in federal court).

This Court agrees with the Commissioner that Ms. Sturdivant's Appointments Clause claim has been forfeited by her failure to raise the issue earlier. A constitutional challenge under the Appointments Clause is "nonjurisdictional," and thus a party may forfeit its Appointments Clause argument by failing to raise it. *See, e.g.*, NLRB v. RELCO Locomotives, Inc., 734 F.3d 764, 795, 798 (8th Cir. 2013); *see also, e.g.*, *Freytag v. Commissioner*, 501 U.S. 868, 878-79 (1991); *Freytag*, 501 U.S. at 893-94 (Scalia, J., concurring in part) ("Appointments Clause claims, and other structural constitutional claims, have no special entitlement to review. A party forfeits the right to advance on appeal a nonjurisdictional claim, structural or otherwise, that he fails to raise at trial.").

Since *Lucia*, a number of courts have found that a challenge to the appointment of a Social Security Administration ALJ must be raised in the administrative proceedings in order to preserve it for judicial review. *See, e.g.*, Order at 3, *Garrison v. Berryhill*, No. 1:17-cv-00302-FDW (W.D.N.C. Oct. 10, 2018), ECF No. 24; Order at 55-56, *T. v. Comm'r of Soc. Sec'y Admin.*, No. 1:17-cv-00650-RGV (N.D. Ga. Sept. 28, 2018), ECF No. 17; Order at 5, *Williams v. Berryhill*,

No. 2:17-cv-87-KS-MTP (S.D. Miss. Sept. 28, 2018), ECF No. 24; *Davidson v. Comm'r of Soc. Sec'y*, No. 2:16-cv-00102, 2018 WL 4680327, at *2 (M.D. Tenn. Sept. 28, 2018); *Stearns v. Berryhill*, No. C17-2031-LTS, 2018 WL 4380984, at *5-6 (N.D. Iowa Sept. 14, 2018); *Iwan v. Comm'r of Soc. Sec'y*, No. 17-CV-97-LRR, 2018 WL 4295202, at *9 (N.D. Iowa Sept. 10, 2018) ("Because Iwan did not raise her Appointments Clause challenge before the ALJ or Appeals Council, the court finds that she has waived this issue."); *Hugues v. Berryhill*, No. CV 17-3892-JPR, 2018 WL 3239835, at *2 n.2 (C.D. Cal. July 2, 2018) ("To the extent *Lucia* applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during his administrative proceedings.").

That these cases consistently find that a waiver and forfeiture under these circumstances is not surprising. It is manifestly fair to all the parties and critical for the efficiency of the Social Security administrative process to require a claimant to raise all issues—particularly issues related to the authority and legitimacy of the hearing officer—as early as the challenge can be made so that, if necessary, the claim can be handled by a different officer. In other words, Ms. Sturdivant is not entitled to sit on her hands, see how the ALJ rules on her claim and then, when she is disappointed with the decision, raise the issue for the first time in her District Court appeal. Common sense notions of both fairness and efficiency strongly counsel against allowing a plaintiff to raise a constitutional challenge to the appointment of an ALJ for the first time on appeal to the District Court.

Therefore, this Court finds that Ms. Sturdivant has waived and forfeited her constitutional claim that the ALJ was not properly appointed and declines her request to remand the case on that

13

ground.[6] *See Lucia*, 138 S. Ct. at 2055; *L.A. Tucker*, 344 U.S. at 37 ("Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.").

## V. CONCLUSION

A reasonable mind would find that the evidence in the record is adequate to support the ALJ's decision. The decision of the ALJ, therefore, is hereby **AFFIRMED.**

**SO ORDERED.**

Signed: November 21, 2019

Kenneth D. Bell
United States District Judge

---

[6] This Court consequently does not need to address and expresses no opinion on the merits of Ms. Sturdivant's Appointments Clause argument.